J-A28001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JAMAL PETTY | |
| Appellee | No. 793 EDA 2015 |

Appeal from the Judgment of Sentence October 15, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004385-2007

BEFORE:  GANTMAN, P.J., PANELLA, J., and SHOGAN, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MARCH 01, 2016**

Appellant, the Commonwealth of Pennsylvania, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following this Court's remand for resentencing in connection with Appellee, Jamal Petty's, jury trial convictions for possession of a controlled substance with the intent to deliver ("PWID"), criminal conspiracy, and criminal use of a communication facility.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. On April 21, 2005, May 4, 2005, May 18, 2005, and June 8, 2005, special agents from the Attorney General's Office set up controlled drug buys using a confidential informant ("C.I.").  During each controlled buy, the agents

_____

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. §§ 903; 7512, respectively.

conducted surveillance and observed the C.I. meet with Paul Villari to purchase cocaine. Each time, the C.I. gave Mr. Villari money for the drugs, Mr. Villari would meet his supplier to obtain the drugs, and Mr. Villari would return and deliver the drugs to the C.I. The agents' investigation of these controlled buys led them to the area of the Thomas Jefferson University Hospital, where Mr. Petty (Mr. Villari's drug dealer) would supply him with drugs outside of the hospital.

On September 21, 2005, special agents of the Attorney General's Office waited outside of the hospital for Mr. Petty in an effort to converse with him and to try to "flip" him. In other words, the agents wanted to obtain Mr. Petty's cooperation with their ongoing drug investigation to learn who was supplying Mr. Petty with drugs. When the agents identified themselves, Mr. Petty made movements toward the back of his waistband which indicated to the agents that Mr. Petty might be reaching for a weapon. The agents then patted-down Mr. Petty and retrieved multiple baggies of marijuana from Mr. Petty's person; the agents did not find any weapons. The agents asked Mr. Petty if they could speak with him, and Mr. Petty agreed to speak with the agents in their vehicle. The agents also asked if they could search Mr. Petty's backpack for weapons, and Mr. Petty consented to the search. The agents did not discover any weapons, but they found cocaine, marijuana, and a digital scale.

The Commonwealth subsequently charged Mr. Petty with multiple

counts of PWID, criminal conspiracy, and criminal use of a communication facility, in connection with the four controlled buys and the search and seizure on September 21, 2005. Mr. Petty proceeded to a jury trial on June 26, 2008. On July 11, 2008, the jury reached its verdict. The jury acquitted Mr. Petty of all charges related to the April 21, 2005 and May 4, 2005 controlled buys. With respect to the May 18, 2005 controlled buy, the jury convicted Mr. Petty of PWID (cocaine), criminal use of a communication facility, and conspiracy. Regarding the June 8, 2005 controlled buy, the jury convicted Mr. Petty of PWID (cocaine), criminal use of a communication facility, and conspiracy. Concerning the September 21, 2005 incident, the jury convicted Mr. Petty of PWID (marijuana). The court deferred sentencing until October 23, 2008.

Following the trial, the court asked the jurors to complete Jury Selection Commission Questionnaires about their experiences as jurors. Two unidentified jurors submitted responses indicating the court crier had given other jury members information about Mr. Petty's prior record and had stated Mr. Petty was a "bad guy." The court subsequently secured a copy of the jury list for the attorneys and provided the attorneys with the names and addresses of the jurors who had served on Mr. Petty's trial, so that the parties could investigate the matter further.

On October 23, 2008, the parties appeared before the court for the scheduled sentencing hearing. Prior to sentencing, however, the court

discussed the alleged jury tampering and asked if the parties had brought in any jurors to testify. Both parties indicated they had not brought in any jurors to testify about the alleged jury tampering and declined the court's opportunity for more time to contact the jurors who had served on Mr. Petty's trial. At that time, Mr. Petty's trial counsel made an oral motion for extraordinary relief requesting dismissal of all charges for which Mr. Petty was convicted based on the alleged jury tampering. Trial counsel stated he did not subpoena any jurors because it was "unnecessary," as the juror notes "[spoke] for themselves." The Commonwealth claimed the juror notes were merely allegations and failed to meet Mr. Petty's burden to prove jury tampering. At the conclusion of the hearing, the court denied Mr. Petty's motion for extraordinary relief, but it ordered a new trial on the charges for which Mr. Petty had been convicted. The court determined the juror notes constituted "hard evidence" Mr. Petty was denied a fair trial, so a new trial was the appropriate remedy.

On June 30, 2010, this Court reversed and remanded for sentencing. *See Commonwealth v. Petty*, 4 A.3d 703 (Pa.Super. 2010) (unpublished memorandum). This Court decided the juror notes were hearsay, which did not constitute competent evidence to prove jury tampering. *See id.* Mr. Petty did not file a petition for allowance of appeal with our Supreme Court.

The trial court scheduled a sentencing hearing for January 14, 2011. At the commencement of the hearing, Mr. Petty made another motion for

extraordinary relief pursuant to Pa.R.Crim.P. 704(B)[2] seeking judgment of acquittal on all charges for which he was convicted, again based on the alleged jury tampering. Alternatively, trial counsel asked the court to appoint new counsel for Mr. Petty, to file a petition for allowance of appeal *nunc pro tunc* from this Court's June 30, 2010 decision. Trial counsel explained he had been privately retained to represent Mr. Petty at his preliminary hearing and at trial. Trial counsel stated he represented Mr. Petty on appeal even though Mr. Petty was out of funds to pay for legal services, and trial counsel did not file a petition for allowance of appeal due to Mr. Petty's financial inability to pay. The court held Mr. Petty's motion for extraordinary relief under advisement and said it would appoint new counsel to investigate trial counsel's potential ineffectiveness for, *inter alia*, failing to file a petition for allowance of appeal on behalf of Mr. Petty and declining to subpoena and call jurors as witnesses at the originally scheduled October 23, 2008 sentencing hearing.

Due to the court's failure to sentence Mr. Petty at the January 14, 2011 hearing, the Commonwealth filed an application in this Court on February 9, 2011, seeking enforcement of this Court's June 30, 2010 decision, pursuant to Pa.R.A.P. 2591(b) (stating: "At any time, upon its own

---

[2] ***See*** Pa.R.Crim.P. 704(B)(1) (stating: "Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial").

motion or upon application, an appellate court may issue any appropriate order requiring obedience to or otherwise enforcing its judgment or other order"). This Court granted the Commonwealth's application on March 2, 2011. This Court's order expressly prohibited the trial court from undertaking any collateral proceedings, including investigation of the ineffective assistance of counsel, which must be raised in a Post Conviction Relief Act ("PCRA")[3] petition following sentencing.

On April 1, 2011, the parties appeared for sentencing. The Commonwealth informed the court certain mandatory minimum sentences applied to Mr. Petty's case. Specifically, the PWID conviction for the May 18, 2005 controlled buy carried a three (3) year mandatory minimum sentence (*see* 18 Pa.C.S.A. § 7508(a)(3)(ii) (PWID for cocaine between 10-100 grams)); and the PWID conviction for the June 8, 2005 controlled buy carried a seven (7) year mandatory minimum sentence (*see* 18 Pa.C.S.A. § 7508(a)(3)(iii) (PWID for cocaine over 100 grams, where defendant has been convicted of another drug trafficking offense)). Consistent with those mandatory minimum sentences, the court sentenced Mr. Petty to three (3) to six (6) years' imprisonment for the PWID conviction related to the May 18, 2005 controlled buy, and seven (7) to fourteen (14) years' imprisonment for the PWID conviction related to the June 8, 2005 controlled buy. The

_____

[3] 42 Pa.C.S.A. §§ 9541-9546.

court sentenced Mr. Petty to one (1) year of probation for the PWID (marijuana) conviction related to the September 21, 2005 incident. Regarding Mr. Petty's criminal use of a communication facility and conspiracy convictions, the court sentenced Mr. Petty to three (3) years' probation for each conviction. The court imposed all sentences concurrently. The court also imposed the mandatory $50,000.00 fine under Section 7508(a)(3)(iii). The court stayed the sentence pending post-sentence motions. The court also permitted trial counsel to withdraw from the case and appointed new counsel ("replacement counsel") to represent Mr. Petty.[4]

On April 11, 2011, Mr. Petty timely filed a post-sentence motion requesting additional time to file a supplemental post-sentence motion after receipt of the relevant notes of testimony. The court did not rule on the motion. Mr. Petty filed a supplemental post-sentence motion on March 23, 2012, indicating replacement counsel had received the relevant notes of testimony but had not received transcription of audio tapes presented at trial. Replacement counsel requested transcription of the audio tapes. Replacement counsel also challenged, *inter alia*, the weight and sufficiency of the evidence produced at trial and trial counsel's effectiveness. Mr. Petty filed a supplement to his supplemental post-sentence motion on March 27,

_____

[4] Notwithstanding the court's indication at the January 14, 2011 sentencing hearing, that it was appointing new counsel to represent Mr. Petty, trial counsel remained counsel of record for Mr. Petty until sentencing on April 1, 2011.

2012. Meanwhile, Mr. Petty also filed a PCRA petition asserting trial counsel's ineffectiveness for failing to file a petition for allowance of appeal with our Supreme Court from this Court's June 30, 2010 decision, and requesting reinstatement of Mr. Petty's right to file a petition for allowance of appeal *nunc pro tunc*. Due to the fact that Mr. Petty still had not begun serving his sentence, the Commonwealth filed a motion to revoke bail and to order Mr. Petty to commence serving his sentence.

On April 9, 2012, the court held a hearing regarding the parties' respective filings. The Commonwealth alleged the court lacked jurisdiction to rule on Mr. Petty's post-sentence motions because the 120-day timeframe had expired,[5] so the Commonwealth submitted Mr. Petty's post-sentence motions were effectively denied by operation of law. The Commonwealth also maintained the court lacked jurisdiction to entertain Mr. Petty's PCRA claims because Mr. Petty had not begun serving his sentence, so he was ineligible for PCRA relief. The court disagreed with the Commonwealth's contentions and scheduled a hearing for Mr. Petty's post-sentence motions.

On December 10, 2012, the parties appeared for the hearing on Mr. Petty's post-sentence motions. Prior to the hearing, the Commonwealth again submitted that the court lacked jurisdiction to rule on the post-sentence motions and requested that the trial court direct the Clerk of

_____

[5] ***See*** Pa.R.Crim.P. 720(B)(3) (discussing time limits for decision on post-sentence motions).

- 8 -

Courts to issue an order denying the post-sentence motions by operation of law. The court denied the Commonwealth's request. Replacement counsel stated she had no notice from the Clerk of Courts that the post-sentence motions had been denied by operation of law and wanted to proceed with the hearing. Replacement counsel presented two witnesses at the hearing who offered character testimony on Mr. Petty's behalf.

On January 24, 2013, Mr. Petty filed an amended PCRA petition. The court held another hearing on Mr. Petty's post-sentence motions on January 28, 2013. Replacement counsel presented two more witnesses who offered character testimony on Mr. Petty's behalf. Replacement counsel then called trial counsel to testify about, *inter alia*, his decisions not to call character witnesses at Mr. Petty's trial or subpoena jurors for the originally scheduled October 23, 2008 sentencing hearing or file a petition for allowance of appeal on Mr. Petty's behalf from this Court's June 30, 2010 decision. At the conclusion of the hearing, the court took the post-sentence motions under advisement.

On April 1, 2013, the parties appeared for another hearing. Significantly, the parties stipulated that the Clerk of Courts had failed to issue an order denying the post-sentence motions by operation of law, and the trial court should issue an order deeming the post-sentence motions denied by operation of law. The court accepted the parties' stipulation and issued an order deeming the post-sentence motions denied by operation of

law on April 1, 2013. The parties also stipulated that the court should dismiss the PCRA filings without prejudice for Mr. Petty to file subsequent PCRA petitions following a direct appeal; and that the hearings held December 10, 2012 and January 28, 2013, shall constitute evidence for any subsequent PCRA proceedings. The court accepted the parties' stipulations and permitted Mr. Petty to continue to remain on bail, with his sentence stayed, pending direct appeal from the judgment of sentence. The court expressed its belief that Mr. Petty should remain on bail due to some "good appellate issues," particularly with regard to the alleged jury tampering.

On April 26, 2013, Mr. Petty timely filed a direct appeal challenging the weight and sufficiency of the evidence produced at trial, the denial of his pre-trial suppression motion, and the legality of his sentence. This Court vacated and remanded for resentencing on June 20, 2014, based on the trial court's imposition of mandatory minimum sentences as inconsistent with ***Alleyne v. United States***, ___ U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) (holding any fact increasing mandatory minimum sentence for crime is considered element of crime to be submitted to fact-finder and found beyond reasonable doubt). ***See Commonwealth v. Petty***, 2014 WL 10919350 (Pa.Super. June 20, 2014) (unpublished memorandum) (concluding imposition of mandatory minimum sentences for Mr. Petty's PWID (cocaine) convictions violated ***Alleyne***, where jury made no

determination regarding weight of drugs).[6]    Based on this Court's disposition, it declined to address any of Mr. Petty's other claims on appeal.

On October 15, 2014, the parties appeared for resentencing. Replacement counsel acknowledged the court had the benefit of a pre-sentence investigation ("PSI") report.   Replacement counsel also discussed Mr. Petty's family history and prior employment.   Replacement counsel offered as exhibits photographs of Mr. Petty and his family and letters from Mr. Petty's friends and family.   Replacement counsel indicated several witnesses were present at the hearing who wished to testify about Mr. Petty's good character.

The Commonwealth stressed that Mr. Petty has continued to escape serving his sentence throughout these proceedings.   The Commonwealth also highlighted that Mr. Villari (Mr. Petty's cohort) pled guilty to PWID and conspiracy, and received a four (4) to eight (8) year sentence.   The Commonwealth argued Mr. Petty should receive a harsher sentence than Mr. Villari, as Mr. Petty supplied the drugs to Mr. Villari, who was merely the middleman.   The Commonwealth set forth the applicable sentencing guidelines and recommended an aggregate seven (7) year minimum sentence.   During the course of the hearing, replacement counsel made

---

[6] This Court subsequently declared the mandatory minimum statute at issue, 18 Pa.C.S.A. § 7508, unconstitutional in its entirety. **See Commonwealth v. Fennell**, 105 A.3d 13 (Pa.Super. 2014), *appeal denied*, ___ Pa. ___, 121 A.3d 494 (2015).

reference to the alleged jury tampering in this case. The court acknowledged the alleged jury tampering; and the Commonwealth made an oral motion for the court to recuse itself, based on the court's purported inability to separate the alleged jury tampering from the resentencing proceedings. The court did not expressly rule on the motion, and the hearing continued.

Mr. Petty testified about his employment, family life, contributions to the community, and personal growth since the time of trial. Mr. Petty requested leniency in sentencing so he could continue to take care of his family. The court also heard testimony from Mr. Petty's character witnesses.

At the conclusion of the hearing, the court sentenced Mr. Petty to eleven and one-half (11½) to twenty-three (23) months' imprisonment, plus one (1) year of probation, for each of Mr. Petty's convictions. The court imposed all sentences concurrently. The court also granted Mr. Petty immediate parole, with telephone reporting probation once a month. The court waived the supervision fee and did not impose any fines. The court stated:

> Because he has his children and he's working—he seems to be a hard worker. He's taking care of four kids. He seems to have made a turnaround in life. He has character witnesses who have come here and spoken highly of him.
>
> People do make mistakes in life. However, people also deserve to have a second chance in life, and I try to do that. I believe he's going to be a law-abiding citizen for the rest of his life. I took into consideration that he's had

the sword of Damocles hanging over his head for the last seven years, and that was worth a lot.

And that's why I made the probation so short, because, in my opinion, he's been on probation for the last seven years.

(N.T. Resentencing Hearing, October 15, 2014, at 51-52; R.R. at 188).

On October 25, 2014, the Commonwealth timely filed a post-sentence motion, which the court denied on February 26, 2015. The Commonwealth timely filed a notice of appeal on March 16, 2015. On March 24, 2015, the court ordered the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which the Commonwealth timely filed on March 30, 2015.

The Commonwealth raises one issue for our review:

WHETHER THE [TRIAL] COURT ABUSED ITS DISCRETION BY IMPOSING AN EXCESSIVELY LENIENT SENTENCE WHICH UNREASONABLY DEVIATED FROM THE SENTENCING GUIDELINES, FAILED TO ADEQUATELY EXPLAIN ITS REASONS FOR GUIDELINE DEPARTURE AND DISPARATE SENTENCING OF THE CO-DEFENDANT AND THE SENTENCE WAS MOTIVATED BY BIAS?

(Commonwealth's Brief at 4).

The Commonwealth argues the court's sentence was excessively lenient and an unreasonable deviation from the sentencing guidelines. The Commonwealth asserts Mr. Petty served only twenty-seven days in jail from the date of his arrest until the date he posted bail. The Commonwealth emphasizes that the court also waived the supervision fees, did not order Mr. Petty to pay a fine, and directed that Mr. Petty be placed on monthly

telephone reporting probation. The Commonwealth stresses the court failed to acknowledge its departure from the guidelines and did not provide adequate reasons for its extreme deviation from the guidelines. The Commonwealth suggests the court's remarks on-the-record after it had already sentenced Mr. Petty related only to why the trial court imposed such a short probationary period, but not why the court deviated drastically from the sentencing guidelines. The Commonwealth suggests the court also lacked authority to grant Mr. Petty immediate parole, prior to the expiration of his minimum sentence.

The Commonwealth further argues the court did not articulate any reasons to justify its disparate sentences for Mr. Petty and his cohort, Mr. Villari. The Commonwealth asserts Mr. Villari pled guilty on June 23, 2008, to PWID and conspiracy, and received an aggregate sentence of four to eight years' imprisonment. The Commonwealth maintains Mr. Petty was the drug supplier and Mr. Villari was just a lower level drug dealer. Although the Commonwealth discussed Mr. Villari's sentence at Mr. Petty's resentencing hearing, the court ignored the Commonwealth's position that Mr. Petty should receive a harsher sentence than Mr. Villari. The Commonwealth claims the sentencing disparity is particularly troubling, given the fact that Mr. Villari was less culpable than Mr. Petty and took responsibility for his actions by entering a guilty plea.

The Commonwealth also insists the record demonstrates the trial

court's bias in favor of Mr. Petty throughout these proceedings. The Commonwealth submits the court accepted as fact the content of the juror notes in this case and determined jury tampering took place, despite the Superior Court's decision reversing the award of a new trial. The Commonwealth emphasizes that the trial court refused to sentence Mr. Petty immediately upon remand. Instead, the Commonwealth insists the court took under advisement Mr. Petty's second motion for extraordinary relief, made orally at the January 14, 2011 sentencing hearing, which raised the same issue regarding jury tampering that the Superior Court had already decided. The Commonwealth submits the court indicated it would appoint new counsel to investigate PCRA issues, disregarding the Commonwealth's argument that Mr. Petty was ineligible for PCRA relief as he had not yet been sentenced. The Commonwealth insists the trial court's failure to sentence Mr. Petty in a timely manner compelled the Commonwealth to file an application for enforcement of the Superior Court's June 30, 2010 decision.

The Commonwealth contends the court exhibited its bias once again when it immediately stayed Mr. Petty's sentence on April 1, 2011. The Commonwealth avers the court also ignored the Rules of Criminal Procedure regarding post-sentence motions by holding evidentiary hearings on the post-sentence motions far beyond the applicable timeframe in which to rule on them. The Commonwealth submits the court further displayed its bias when it stated at the April 1, 2013 hearing that Mr. Petty had a "good

appellate issue" regarding the jury tampering allegations, when the Superior Court had already decided that issue. The Commonwealth declares the court's leniency upon resentencing, coupled with the grant of immediate parole, imposition of no fines, waiver of supervision fees, and short telephone-reporting probationary term, demonstrate the bias that motivated the court's sentence.

The Commonwealth concludes the court imposed an excessively lenient sentence which unreasonably deviated from the sentencing guidelines, the court failed to state adequate reasons for the guideline departure, the court did not acknowledge the disparity in sentences between Mr. Petty and his cohort, the court's sentence was motivated by bias, and this Court must vacate and remand for resentencing before a different jurist. As presented, the Commonwealth's claims implicate the discretionary aspects of sentencing. *See Commonwealth v. Antidormi*, 84 A.3d 736 (Pa.Super. 2014), *appeal denied*, 626 Pa. 681, 95 A.3d 275 (2014) (stating claims that court imposed sentence outside of sentencing guidelines without stating adequate reasons for sentence imposed implicates discretionary aspects of sentencing); *Commonwealth v. Corley*, 31 A.3d 293 (Pa.Super. 2011) (explaining allegation that court's sentence was motivated by bias challenges discretionary aspects of sentencing); *Commonwealth v. Cleveland*, 703 A.2d 1046 (Pa.Super. 1997), *appeal denied*, 555 Pa. 739, 725 A.2d 1218 (1998) (reasoning claim of unexplained disparity between

appellant's and his co-defendant's sentences challenges court's sentencing discretion); **Commonwealth v. Moore**, 617 A.2d 8 (Pa.Super. 1992) (explaining Commonwealth's claim that sentence imposed was excessively lenient and clearly unreasonable under facts and circumstances of case presents discretionary sentencing challenge).

A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. **Commonwealth v. Hunter**, 768 A.2d 1136 (Pa.Super. 2001), *appeal denied*, 568 Pa. 695, 796 A.2d 979 (2001). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Objections to the discretionary aspects of a sentence are waived if they are not raised at the sentencing hearing or in a timely filed post-sentence motion. **Commonwealth v. Griffin**, 65 A.3d 932 (Pa.Super. 2013), *appeal denied*, 621 Pa. 682, 76 A.3d 538 (2013).

What constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825 (Pa.Super. 2007).

A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Sierra*, 752 A.2d 910, 913 (Pa.Super. 2000) (internal citation omitted).  In other words, an appellant's Rule 2119(f) statement must sufficiently articulate the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002).

On appeal, this Court will not disturb the judgment of the sentencing court absent an abuse of discretion.  *Commonwealth v. Fullin*, 892 A.2d 843 (Pa.Super. 2006).

> [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.  In more expansive terms, …: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.  Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing

decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of the sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court. Thus, rather than cabin the exercise of a sentencing court's discretion, the guidelines merely inform the sentencing decision.

* * *

[W]e reaffirm that the guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors—they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence. …

**Commonwealth v. Walls**, 592 Pa. 557, 564-70, 926 A.2d 957, 961-65

(2007) (internal quotation marks, footnotes, and citations omitted).

Furthermore, in exercising its discretion, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence that takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as the court also states of record the factual basis and specific reasons which compelled the deviation from the guidelines. This Court must remand for resentencing with instructions if we find that the sentencing court sentenced outside the guidelines and the sentence was unreasonable.

**Commonwealth v. Kenner**, 784 A.2d 808, 811 (Pa.Super. 2001), *appeal*

*denied*, 568 Pa. 695, 796 A.2d 979 (2002) (internal citations omitted).

Pursuant to Section 9721(b), "the court shall follow the general

principle that the sentence imposed should call for confinement that is

consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "[T]he court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Id.* Nevertheless, "[a] sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question…." *Commonwealth v. Crump*, 995 A.2d 1280, 1283 (Pa.Super. 2010), *appeal denied*, 608 Pa. 661, 13 A.3d 475 (2010). Rather, the record as a whole must reflect the sentencing court's consideration of the facts of the case and the defendant's character. *Id. See also Commonwealth v. Fowler*, 893 A.2d 758 (Pa.Super. 2006) (stating where sentencing court had benefit of PSI report, we can presume it was aware of relevant information regarding defendant's character and weighed those considerations along with mitigating statutory factors).

Additionally, we observe:

> [G]enerally…issues not raised in a Rule 1925(b) statement will be deemed waived for review. An appellant's concise statement must properly specify the error to be addressed on appeal. In other words, the Rule 1925(b) statement must be "specific enough for the trial court to identify and address the issue [an appellant] wishe[s] to raise on appeal." *Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007). "[A] [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all." *Id.* The court's review and legal analysis can be

- 20 -

> fatally impaired when the court has to guess at the issues raised. Thus, if a concise statement is too vague, the court may find waiver.

***Commonwealth v. Hansley***, 24 A.3d 410, 415 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (some internal citations omitted).

***See also Commonwealth v. Castillo***, 585 Pa. 395, 888 A.2d 775 (2005) (holding issues not raised in Rule 1925(b) statement are waived on appeal).

Instantly, the Commonwealth raised the following issues in its Rule 1925(b) statement: (1) the court abused its discretion by imposing an excessively lenient sentence and unreasonably deviated from the sentencing guidelines; (2) the court failed to adequately explain the reasons for departing from the sentencing guidelines; and (3) the court's sentence compromised the sentencing scheme as a whole, was inconsistent with the Sentencing Code and the sentence was contrary to the fundamental norms of sentencing. (***See*** Commonwealth's Rule 1925(b) Statement, filed March 30, 2015, at 1-2.) Significantly, the Commonwealth did not include in its Rule 1925(b) statement its claims on appeal that the court failed to explain the disparity in sentences between Mr. Petty and Mr. Villari or that the court's sentence was motivated by bias. Thus, the disparity and bias claims are waived.[7] ***See Castillo, supra***. Notably, the trial court did not address

_____

[7] Additionally, the Commonwealth failed to articulate these precise claims of error in its post-sentence motion. (***See*** Commonwealth's Post-Sentence Motion, filed October 25, 2014, at 3.) ***See also Griffin, supra***. Instead,
*(Footnote Continued Next Page)*

these complaints in its Rule 1925(a) opinion. Consequently, to the extent the Commonwealth purported to include these claims within its statement that "the court's sentence compromised the sentencing scheme as a whole, was inconsistent with the Sentencing Code and the sentence was contrary to the fundamental norms of sentencing," the Commonwealth's Rule 1925(b) statement was too vague to allow the court to identify those issues, constituting waiver. **See Hansley, supra**.

The Commonwealth's remaining claims of leniency and failure to state adequate reasons for the guideline departure present substantial questions which warrant our review. **See Antidormi, supra** (explaining allegation sentencing court imposed sentence outside of guidelines without stating adequate reasons on record presents substantial question); **Kenner, supra** (stating Commonwealth's claim sentence imposed was excessively lenient and unreasonably deviated from guidelines raises substantial question).

_(Footnote Continued)_ ──────────

the Commonwealth sought to incorporate these claims in its post-sentence motion by reference to the arguments it made at the resentencing hearing. Nevertheless, Pennsylvania law disapproves of "incorporation by reference" in legal filings. **See, e.g., Commonwealth v. Briggs**, 608 Pa. 430, 12 A.3d 291 (2011), _cert. denied_, ___ U.S. ___, 132 S.Ct. 267, 181 L.Ed.2d 157 (2011) (stating "incorporation by reference" is unacceptable manner of appellate advocacy for proper presentation of claim for relief); **Commonwealth v. Smith**, 955 A.2d 391, 393 n.5 (Pa.Super. 2008) (_en banc_) (stating: "We do not condone the Commonwealth's incorporation by reference of its motion for reconsideration" in its Rule 1925(b) statement). Consequently, the Commonwealth's claims regarding the disparity in sentencing and the court's alleged bias are arguably waived on this basis as well.

In analyzing the Commonwealth's sentencing challenges, the trial court reasoned:

> This [c]ourt was well aware of the Sentencing Guidelines at the time it sentenced [Mr. Petty]. As can be seen from the record, the guidelines were laid out by the Commonwealth, and this [c]ourt acknowledged that its sentence deviated from the guidelines. This [c]ourt heard lengthy arguments from both [replacement counsel] and the Commonwealth as well as testimony from [Mr. Petty's] wife, Ebony Pitts, and [Mr. Petty] himself. In addition to Ms. Pitts, [Mr. Petty's] sister, Ms. Pitts' father and stepmother, and Ms. Pitts' mother were present to support [Mr. Petty] and offer testimony on his behalf. This [c]ourt also considered letters, affidavits, and photographs attached to [Mr. Petty's] Resentencing Memorandum of Law, which was submitted by [replacement counsel] during the hearing and is attached as Exhibit A. This [c]ourt heard testimony that [Mr. Petty] and his wife have four children, including two of Ms. Pitts' children from previous relationships. By all accounts, [Mr. Petty] has supported his step-children and raised them as his own since becoming involved with Ms. Pitts. [Mr. Petty] works two jobs to support his family, as his wife has medical problems that prevent her from working. Ms. Pitts' mother, Ms. Marshall, testified that [Mr. Petty] is a good person who took care of her after she had a stroke.
>
> At the time of [resentencing], this [c]ourt noted that [Mr. Petty] is a hard worker, and that he will likely be a law-abiding citizen going forward. This [c]ourt was particularly impressed by the efforts [Mr. Petty] has made to improve his life since his arrest in 2007, and by [Mr. Petty's] family support. This [c]ourt also took into consideration that, at the time of sentencing, [Mr. Petty's] case had been ongoing for approximately 7 years, during which time [Mr. Petty] has had no additional contacts with the criminal justice system.
>
> Based on the foregoing, it is clear that this [c]ourt did properly consider the guidelines when fashioning [Mr. Petty's] sentence, and that its deviation, though significant, was not "unreasonable" or without adequate

- 23 -

explanation. As such, the sentence of this [c]ourt must stand.

(Trial Court Opinion, filed May 18, 2015, at 6-7) (internal citations omitted). We see no reason to disrupt the court's broad sentencing discretion. *See Walls, supra*; *Fullin, supra*; *Kenner, supra*.

The record confirms the Commonwealth set forth the applicable sentencing guidelines at the resentencing hearing, and the court chose to deviate from those guidelines. The court remarked that Mr. Petty has children and was working hard to support his family. The court acknowledged Mr. Petty's character witnesses who spoke highly on his behalf. The court expressed its belief that Mr. Petty had "made a turnaround in life" and would "be a law-abiding citizen for the rest of his life." (*See* N.T. Resentencing Hearing at 51-52; R.R. at 188.) The court also emphasized the fact that Mr. Petty had the weight of these proceedings on his shoulders for seven years, "and that was worth a lot." (*See id.*) The court's statements at the time of resentencing make clear the court gave due consideration to the facts of this case and to Mr. Petty's character, and provided reasons for its deviation from the guidelines.[8] *See Crump, supra*; *Kenner, supra*. *See also Walls, supra*.

Additionally, the jurist who presided over Mr. Petty's resentencing

_____

[8] We reject the Commonwealth's position that the court's remarks pertained solely to why the court imposed such a short probationary term.

proceeding also presided over Mr. Petty's trial and all proceedings since the 2008 trial. Thus, the court was well aware of the circumstances of this case, the nature of the offenses at issue, Mr. Petty's rehabilitative needs, and the gravity of the offenses as they relate to the impact on the community. **See Kenner, supra**; 42 Pa.C.S.A. § 9721(b). The court also had the benefit of a PSI report, so we can presume the court was aware of relevant information regarding Mr. Petty's character and weighed those considerations along with mitigating factors. **See Fowler, supra**. Given the circumstances of this case and in light of the court's remarks at the resentencing hearing and in its Rule 1925(a) opinion, we cannot say the court's sentence was "unreasonable."[9] **See Kenner, supra**. Therefore, the Commonwealth's challenge to the court's sentencing discretion merits no relief. **See Walls, supra**; **Fullin, supra**; **Kenner, supra**. Accordingly, we affirm.

Judgment of sentence affirmed.

_____

[9] Further, the trial court had authority to grant Mr. Petty immediate parole where the court imposed a maximum term of imprisonment that was less than two years. **See** 61 Pa.C.S.A. § 6132(a), (b) (stating parole board shall have exclusive power to parole and re-parole; except for special cases, powers and duties conferred by this section shall not extend to persons sentenced for maximum period of less than two years; nothing in this section shall be construed to prevent trial court from paroling any person sentenced by it for maximum period of less than two years).

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/1/2016